COLLINS, *Administrator*, v. TROTTER *et al.*, *Appellants*.

1.  **Promissory Note, when Payable.**  A promissory note made payable on the "first day of March," without naming the year, is regarded in the same light as where the time of payment is left blank, or no time is specified, and is payable on demand.   And suit brought on such note is a sufficient demand.

2.  **Pleading, Civil:** REPLY: OBJECTIONS, WHEN WAIVED.   A reply which denies all the material allegations of the answer, without specifying what allegations are denied, is bad pleading, but not a nullity, and if not objected to before trial, will be held sufficient,

3. **Insane Person**: STATUTES CONSTRUED. Revised Statutes 1879, sections 3653 and 3654, are not applicable to a case where the suit is against a person of unsound mind, and answer is made by his guardian. They can only be applicable to persons of sound mind.

4. ———: ANSWER OF GUARDIAN. The answer of the guardian of an insane person, admitting the execution by his ward of the instrument sued on, but alleging that he was at the time of unsound mind, is equivalent to a plea of *non est factum*, for while it admits the manual act of signing, it denies the consenting mind, without which no act can possess any contractual force. It stands upon the same footing as the answer of a guardian *ad litem* of an infant.

5. ———: INFANT: GUARDIAN AD LITEM: ADMISSIONS OF. The guardian *ad litem* of an infant can waive nothing and admit nothing against his ward, but the adversary of such infant must prove his whole case, whether it be one in equity or at law. And the same rule applies in the case of a lunatic.

6. **Deaf Mute**: BURDEN OF PROVING COMPETENCY. A deaf mute is *prima facie* incompetent to make any contract, and the burden of proving his competency is upon his adversary in the suit.

7. **Insane Person**: INFANT: ADMISSIONS OF GUARDIAN. The guardian of an insane person, like the guardian *ad litem* of an infant, may raise issues by his pleadings whenever he thinks it for the benefit of his ward, but whatever points are tendered, or admissions made, for the purpose of pleading, cannot be used against the person in ward.

8. **Guardian, Appointment of**: PLEADING. In pleading the appointment of a guardian by the probate court, the statute, (R. S. 1879, § 3551,) controls, and the facts conferring jurisdiction need not be more fully stated than therein required. And no objection can afterward be made where it is admitted on the trial that such appointment was duly made, anterior to the trial.

9. **Guardian of Insane Person**: WAIVER BY. The general guardian of an insane person, unlike the guardian *ad litem* of an infant, can act in regard to his ward's interest like an ordinary litigant, and waive objections to the admission of testimony, the same as if acting in his own right. SHERWOOD, J., dissenting.

*Appeal from Carroll Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Hale & Sons* for appellants.

The reply simply denies all the material allegations of the answer, and is a nullity. The allegations of the answer, therefore, stand admitted, and judgment should be for defendants on the pleadings. R. S. 1879, § 3525; *Edmonson v. Phillips*, 73 Mo. 57. It was admitted on trial that defendants J. N. and J. E. Trotter were mutes, and had been from infancy, and were *prima facie* of unsound mind, and Revised Statutes 1879, section 3653, providing that certain instruments may be read in evidence unless denied under oath, does not apply to suits against persons of unsound mind. The note sued on should not have been read in evidence without proof of its execution. Plaintiff should have been required to prove not only the execution of the note, but that defendants were competent to contract, before offering it in evidence. The defendants should have been treated as infants. Defendants being of unsound mind and under guardianship, were not required to deny the allegations in the petition, but plaintiff was required to make strict proof of all the material allegations in the petition. The party who obtained the promise, or contract, or conveyance of one *non compos mentis*, is responsible for the way in which the same is procured, whether directly or indirectly. *Hervey v. Hobson*, 53 Mo. 451; *Somers v. Pennpheng*, 24 Ind. 231, 238; *Cates v. Woodson*, 2 Dana 452; Bishop on Contracts, § 297. The general execution law was not intended to apply to judgments against persons of unsound mind. There are special provisions of law for the sale of their property for the payment of debts and for other purposes. R. S., 1879, § 5804 to 5810, inclusive. Application should have been made to the probate court, through the guardian, for an order of sale. The judgment in this case was illegal, and the order for an execution to issue against defendants' property, unauthorized and void.

*Frank Royse, John L. Mirick* and *Shewalter & Sebree* for respondent.

No error was contained in the declarations of law given by the court. The burden of proof, in this case, was unjustly and illegally laid upon the shoulders of respondent. 2 Kent's Com., (11 Ed.) top p. 583, and cases cited; *Ingraham v. Baldwin*, 5 Seld. (N. Y.) 45. The court below, sitting as a jury, having found the issues for respondent, its finding will not be reviewed by this court in an action at law. *Reynolds v. Rodgers*, 63 Mo. 17. The proceedings of the probate court, so far as this record shows, were null and void. The answer does not set up affirmatively that appellants were notified, nor does it recite any order of the probate court why they were not notified to appear in that court. R. S. 1879, § 5789; *Dutcher v. Hill*, 29 Mo. 271; *State ex rel. v. Baird*, 47 Mo. 302. A void judgment is always obnoxious to collateral attack. *Higgins v. Peltzer*, 49 Mo. 152. The jurisdiction given probate courts by section 5787, *et seq.*, Revised Statutes 1879, was not intended to be exclusive of the ancient and statutory jurisdiction of the circuit court to entertain suits upon promissory notes, irrespective of the status of the defendants, mental or otherwise. There is no negative language employed to countenance such a construction. *Edmonson v. Phillips*, 73 M>. 60; *Pierce v. Calhoun*, 59 Mo. 273; *Wernecke v. Kenyon*, 66 Mo. 284. The guardian having filed his answer and made defense, is a sufficient appearance to give the court jurisdiction of his person. 57 Mo. 83; 53 Mo. 430; R. S. 1879, p. 596, note a.

SHERWOOD, J.—I. Action on a promissory note for the sum of $500, dated June 29th, 1878, made payable on the "first day of March," without mentioning the year. Objection is taken to the note on account of this supposed ambiguity. The objection is not well taken. Such an instrument is payable on demand. 1 Daniel Neg. Inst., § 599.

Such an instrument is regarded in the same light as one where the time of payment is left blank, or no time is specified, in which case on demand is understood. *Ib.*, § 88. And suit brought on such a note is a sufficient demand. And the petition alleges that the note had become due and had not been paid.

II. The defendants, those of them who did not make default, are deaf mutes and answered by their guardian, J. M. Farris, who had been appointed their guardian by procedings had in the probate court in the usual way, where it is alleged that a person is of unsound mind. The answer of the guardian admitted the *signing* of the note by his wards, but stated, in effect, that they were mere sureties of the other defendants, Martin Trotter and J. W. Shinn, and that his wards at the time of signing the note were mentally incapable of doing or performing any legal act in consequence of being of unsound mind, and that their signatures to the note were obtained by the undue influence of their co-defendants, and this was well known to the payee of the note. A reply was filed denying all the material allegations of the petition. This reply was bad pleading, but was not a nullity, and if advantage of its badness was desired, it should have been taken in the lower court, and before trial was had. *Edmonson v. Phillips*, 73 Mo. 57.

III. The answer of the guardian was not sworn to, and the note in suit was admitted in evidence without objection by him. Section 3653, R. S. 1879, provides that, "when any petition, etc., shall be founded upon any instrument in writing, charged to have been executed by the other party * * the execution of such instrument shall be adjudged confessed, unless the party charged to have executed the same, deny the execution thereof by answer, etc., verified by affidavit." And the following section provides, that the section just quoted, shall not apply to cases where suit is brought on a note against an executor or administrator, or any other person representing the person charged to have executed such instrument.

We are not of opinion that these sections are applicable to a case of this kind. The guardian in such case is not the party who is sued, but the lunatic is sued, and the guardian represents him, and, therefore, section 3654 does not apply. But those sections do not apply for much better reasons. The law does not require an impossibility. It certainly was never contemplated by the legislature that a lunatic, after being placed in ward, should be required either to file, or to verify any pleading; otherwise, the appointment of a guardian would be unnecessary. The guardian is not supposed to know whether his insane ward executed the note in suit, and the ward is in no condition to understand, either the nature, force, effect, or obligation of an oath. The law must operate uniformly, and can take no distinction between those whom its fostering care has committed to the charge of a guardian, whether it be one who has barely crossed the narrow boundary line which separates sanity from insanity, or one whose mental disorder is so pronounced that he is a raving maniac, shackled and in a cell. And no one would think of requiring an affidavit in the latter case. The statute can only apply to those who are of sound mind; for any other theory would place a class of poor unfortunates in a far worse situation than any other class of litigants whatsoever, and would frequently pave the way, whereby recoveries could be had against the hapless and the helpless, and they be bereft of their fortunes by an abuse of the forms of law.

Nor can the answer of the guardian, in the case at bar, be held as admitting the execution of the note in suit. Taken as a whole, it is tantamount to a plea of *non est factum*, for though it admits the *manual act of signing* the note declared on, it denies the *consenting mind*, without which no act can possess any contractual or debt creating force. But the answer in this case cannot be held as admitting anything. It obviously stands on the same footing as the answer of a guardian *ad litem* for an infant, since both classes of wards are equally under the protection of

the court. In reference to the latter class it is uniformly held, that the guardian *ad litem* is a species of attorney, whose duty it is to prosecute and defend the rights of his wards. His admissions are not binding upon his ward, nor will the infant be prejudiced by errors or omissions in his answer. There can be no valid decree against an infant by default, or even on answer by his guardian. Tyler on Infan. and Covert., pp. 175, 211 and cases cited. Nothing can be taken as admitted against an infant, but complete proof must be made. *Tuttle v. Garrett,* 15 Ill. 354. And though an infant, in his answer, tender an issue or make admissions therein instead of putting in the common infant's answer, submitting his rights and interests to the protection of the court, the former course, no more than the latter, will exonerate the plaintiff from proving against the infant his whole case, and if in default thereof, he fail to prove a fact which lies at the very foundation of his title or his claims, his bill will be dismissed. *Holden v. Hearn,* 1 Beav. 445. And the rule holds, whether the case be one in equity or one at law. In neither instance can the guardian *ad litem* admit anything, or waive anything which goes to sustain the adversary's action. *Newins v. Baird,* 19 Hun 306; *Fraser v. Marsh,* 3 Eng. C. L. R. 235; *Cowling v. Ely, Ib.* 385; *Litchfield v. Burwell,* 5 How. Pr. 341; *Revely v. Skinner,* 33 Mo. 98; *McClure v. Farthing,* 51 Mo. 109. And an old writer gives as a reason therefor, that "the authority the law gives to the guardian is for the infant's benefit, and not his prejudice." 1 Gilb. Evid. 51.

In an early case, perhaps the earliest, *Leigh v. Ward,* 2 Vent. 72, in an action of ejectment the answer of the guardian *ad litem* of the infant filed in chancery and sworn to, was not admitted in the trial at law to be read against the infant; and the ground of this ruling is thus stated : " For it is not reason that what the guardian swears, should affect the infant." Mr. Daniels, in his work, says that : " The answer of an idiot or lunatic, put in by his committee, may be read against him; and it has been held that the answer of a

person of weak intellect, put in by his guardian, could, also, be read against him; but it is doubtful if this decision would now be followed." 1, Daniels Ch. Plead. and Prac., 178, 341. And he cites the case of *Leving v. Caverly*, Prec. in Ch. (Finch) 229, where the ruling which he states, but doubts the correctness of, is made. Lord Redesdale has, however, settled the point in a very decisive manner in the case of *Carew v. Johnson*, 2 Sch. & Lef. (*loc. cit.*) 293, saying: "It is clear that he was not a person to whom the court would have permitted an oath to be administered. *    *    It is clear that this man was incompetent to put in an answer to the bill filed against him. He could only (like an infant) have answered by another person. If he had been so brought into court, upon an attachment, and an answer had been put in by the guardian, appointed by the court,    *    *    then the answer of that guardian ought to have been merely that he knew nothing of the matter, and submitted his case to the protection of the court." The case just cited, puts the matter at rest, if, indeed, any authority were needed on so plain a proposition, for it must be clear, beyond all cavil or controversy, that no distinction, with any show of reason, can be taken between the case of a helpless infant and that of a helpless lunatic.

In this case the persons in ward, being deaf mutes, were *prima facie* incompetent to make any contract. 1 Greenleaf Ev., § 366. And the burden of showing their competency in this regard, was on the plaintiff. *Ib.* Besides that, as the defendants have been placed in charge of a guardian, they must be regarded as of unsound mind, as far, at least, as the conduct of the trial was concerned, leaving the question an open one as to whether they were competent to contract at the date of the note. *Snook v. Watts*, 11 Beav. 105; *Peak v. Pricer*, 21 Ill. 164. For these reasons it should be held that the case of the plaintiff in relation to the execution of the note by the ward, stood as at common law, and as if the general issue had been pleaded,

(2 Greenleaf Ev., §§ 157, 158,) since, as already seen, their guardian could waive nothing and admit nothing, either by his answer or otherwise, during the progress of the trial. See also these additional authorities : *Wood v. Truax*, 39 Mich. 628 ; 42 Mich. 69 ; 79 Ill. 228 ; *Cartwright v. Wise*, 14 Ill. 417 ; *Peak v. Pricer*, 21 Ill. 164 ; *Fischer v. Fischer*, 54 Ill. 231.

It is not intended by this to assert that the guardian of a person of non-sane mind, may not, like a guardian *ad litem* of an infant, raise issues whenever he thinks it for the benefit of his ward so to do, as in many cases it may be ; but whatever points are tendered or admissions made for the purpose of pleading, they cannot be used against the person in ward. 1 Daniel Ch. Plead. and Prac., 170, and cases cited.

IV. It is claimed that the answer does not show that proper proceedings were had in the probate court for the appointment of a guardian, in that no notice is averred to have been given to the wards of the proceeding in that court. The provisions of the statute, section 3551, govern in a case of this kind, and the facts conferring jurisdiction on the probate court, need not have been stated any more fully than they were. Besides that for the reasons given in another paragraph, any errors or insufficiency in the answer of the guardian of a lunatic cannot be used to the prejudice of his ward. Moreover, on the trial it was broadly admitted that Farris had been duly appointed guardian for the deaf mute defendants by the probate court of Carroll county, at a time anterior to the trial. Nothing is discovered in the instructions requiring special comment.

V. We are agreed on all the points in the foregoing opinion, except that relating to the admission, without objection, of the note in evidence. My associates hold that there is a distinction to be taken between a guardian *ad litem* of an infant, or lunatic and the general guardian of the latter. They hold there is ground for this distinction contained in the provisions of sections 5795 and 5804, R. S.

1879, the former section requiring that the guardian of the lunatic give bond for the faithful performance of his duties; the latter that he "prosecute and defend all actions instituted in behalf of, or against his ward; collect all debts due or becoming due to his ward, and give acquittances and discharges therefor, and adjust, settle and pay all demands due or becoming due from his ward, so far as his estate and effects will extend, as hereinafter provided." And that these sections place the guardian in position so that he can act in regard to his ward's interests, just like an ordinary litigant, and waive objections to the admission of testimony to the same extent as if acting in his own right. They, therefore, hold that, as the guardian in this case failed to object to the introduction of the note in evidence, his wards are as much bound by his failure, in this regard, as in any ordinary case where neither party to the action was laboring under any disability whatever. I am unable to see the force of this reasoning, as I hold that the ward, whether in charge of a guardian *ad litem*, or a general guardian, is equally under the protection of the court, and that the policy of the law requires, in either case, that the guardian admit nothing and waive nothing, and that the adversary make out his full case by necessary proof. Inasmuch as the majority of the court holds that no error was committed, the judgment must be affirmed, in which affirmance I do not concur.

Hough, C. J., concurs in affirming the judgment, and will file a separate opinion. Ray, J., having been of counsel did not sit.