### Skaggs et al. v. Kincaid et al.

1. *Foreclosure—Sales en Masse.*—Ordinarily, a decree of foreclosure may be wholly silent as to the order in which the premises shall be offered for sale, but when the mortgaged lands consist of separate government subdivisions belonging to different persons, the decree must so

Skaggs v. Kincaid.

direct the order of sale of the lots or tracts, as to preserve the rights and equities of the separate owners. A decree absolutely requiring such premises to be sold in one body in the absence of imperative reasons, can not be upheld.

2.  *Guardian ad Litem—Formal Answer.*—The answer of a minor, by his guardian *ad litem*, although formal, is sufficient to interpose any defense which appears in his behalf in the evidence.

3.  *Sales* en Masse, *Authorized by Trust Deed.*—A decree in foreclosure absolutely requiring the premises to be sold in one body, in the absence of imperative reasons for such a course, can not be upheld, and the fact that the trust deed, upon which the proceedings are had, contains a clause authorizing a trustee in his discretion to sell the property *en masse*, can not avail to support such a decree.

Memorandum.—Bill in chancery. Writ of error to reverse a decree for defendant rendered by the Circuit Court of Menard County; the Hon. CYRUS EPLER, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892. Opinion filed March 6, 1893.

## STATEMENT OF THE CASE BY THE COURT.

On the 2d day of January, 1887, Charles Skaggs and Yarra Tilda Skaggs, his wife, executed a trust deed in the nature of a mortgage to Edward Lanning, trustee, upon 200 acres of land in Menard County to secure a note given by the husband, Charles, to James M. Robbins, in the sum of $2,500. A clause in the trust deed authorizes the trustee in his discretion to sell the land in a body if default be made in the payment of the notes. Robbins assigned the note to Lee Kincaid, one of the appellees. On the 2d day of April, 1878, Charles Skaggs and wife conveyed a certain forty-acre tract of the mortgaged lands to their son, James B. Skaggs. In April, 1879, James B. Skaggs died, seized of the title to said forty-acre tract of land (subject to the lien of the mortgage or trust deed to Robbins) and left surviving him, Jane, his widow (now Jane Kilpatrick), and the following children: Clara (now Colson), Cynthia, Annie, Emma and Fannie, to whom descended the title to said tract of forty acres. In April, 1879, Charles Skaggs and wife, Yarra Tilda, conveyed another forty-acre tract of the mortgaged lands to their son, Charles V. Skaggs; he, in 1885, conveyed it to his mother, Yarra Tilda Skaggs, who died intestate, on

the 20th of January, 1890, seized of the title to such tract, subject to the mortgage or trust deed. Yarra Tilda Skaggs left surviving, her husband, said Charles Skaggs, and three daughters and eight sons and five grandchildren (children of James B. Skaggs, her deceased son), to whom her title in said tract of land descended according to the statute in such cases.

In May, 1890, Kincaid, the holder of the note, and Lanning, the trustee, filed this bill in chancery to foreclose the trust deed, making Charles Skaggs, the mortgagor, the children of Yarra Tilda Skaggs, deceased, and the widow and children of James B. Skaggs, deceased, parties defendant.

A guardian *ad litem* was appointed for Fannie Skaggs and Emma Skaggs, infants, children of James B. Skaggs, deceased, who filed for them a formal answer. Charles Skaggs, the mortgagor, and Cyrus Skaggs, his son, by the same solicitor, filed a joint answer admitting the allegations of the complainant bill, and at the same time, by the same solicitor, who was also the solicitor for the complainant in the original bill, filed a joint cross-bill in which it is alleged that the conveyance of forty acres of the land to James B. Skaggs, and the conveyance of a like tract to Charles V. Skaggs, some eleven years before, was each made upon the verbal agreement of the respective grantees that each would pay one-half of the mortgage debt to Lanning, as trustee, together with all interest thereupon; that neither paid anything, but that Charles Skaggs, the father, had paid all interest upon the debt. The cross-bill claims a vendor's lien in favor of Charles Skaggs upon each of said forty-acre tracts and prays for a decree in his favor accordingly. The cross-bill further alleges that in April, 1887, a judgment was rendered in the Cass County Circuit Court against Charles Skaggs for some $992.86, which was revived in 1887 and assigned to Cyrus Skaggs, his son, and co-complainant in the cross-bill—and that in November, 1887, another judgment was rendered in the Circuit Court of Cass County, Illinois, against Charles Skaggs and Moses Skaggs, his son, in the sum of $1,519.83—which was

revived in 1886 and purchased by, and assigned to, Cyrus Skaggs. That execution issued upon such judgment to Menard County, and had been levied upon all interest of the judgment debtors in the lands mentioned in the mortgage, whereby the cross-bill claims a lien was created upon all rights and interests of the judgment debtors, in the land subject to the lien of the trust deed or mortgage, and also to the homestead right of Charles Skaggs in the land. To this cross-bill a merely formal answer for the said infants, Fannie and Emma Skaggs, was filed by a guardian. Lee Kincaid and Edward Lanning, trustee, answered, admitting that the allegations of the cross-bill were true. All other defendants to the original and cross-bill were defaulted—and the case was referred to the master to take and report the evidence. The bill of exceptions does not purport to contain the evidence heard by the master. The master's report as to his findings and conclusions from the evidence is incorporated in the bill of exceptions. These findings support the original bill and the cross-bill and find that there is due to Kincaid on the notes secured by the trust deed $2,759.57 by Cyrus Skaggs on the judgments mentioned in the cross-bill; $4,504.44 to Charles Skaggs as upon the vendor's lien claimed in the cross-bill; the sum of $2,552.93 upon the tract of land conveyed to James B. Skaggs, and a like sum against the tract of which his wife died seized, and the master also finds Charles Skaggs entitled in lieu of his homestead to $1,000.

A decree followed, which orders that Charles Skaggs pay the complainants in the original bill $2,759.37, and that the heirs of James B. Skaggs, deceased, pay Charles Skaggs $2,552, and the heirs of Yarra Tilda Skaggs pay Charles a like sum, to remove the liens which the decree declared and established in favor of Charles against the lands of such parties respectively. The decree then provides that in case Charles Skaggs fails to pay the amount ordered to be paid by him to the complainants in the original bill, that the master sell the entire mortgaged premises (200 acres in all) *en masse*, subject to redemption, and out of the proceeds pay,

first, the cost of the proceeding; then $2,759.57 to Lee Kincaid (the complainant in the original bill); then $1,000 to Charles Skaggs for his homestead; next the cost due on the execution issued from the Cass Circuit Court; and the remainder, so far as necessary, to Cyrus Skaggs upon the judgment execution and levies against Charles Skaggs.

The master sold the lands *en masse*, to Cyrus Skaggs, for $8,625.03. This is a writ of error to obtain a reversal of the decree.

### PLAINTIFFS' BRIEF.

Under the established principles of equity, not only should there not have been a requirement to sell *en masse*, but on the contrary the decree should have provided for a sale in separate tracts, in the inverse order of their alienation by Charles Skaggs; the 120 acres to be sold before the two forties. Iglehart v. Crane, 42 Ill. 261; Tompkins v. Wiltberger, 56 Ill. 385; Allen v. Jackson, 122 Ill. 567; Moore v. Shurtleff, 128 Ill. 370.

The adult defendants did not plead the statute of limitations, but the answer of the infant defendants, by their guardian *ad litem*, demanded strict proof, and prayed the protection of the court. Under this answer all defenses that could be legally availed of, under any answer, are to be considered as interposed on behalf of the minors. Stark v. Brown, 101 Ill. 395; Gilmore v. Gilmore, 109 Ill. 277; Lloyd v. Kirkwood, 112 Ill. 329; Waugh v. Robbins, 33 Ill. 181; Cartwright v. Wise, 14 Ill. 417.

N. W. BRANSON and T. W. McNEELY, solicitors for plaintiffs in error.

EDWARD LANING and CHAS. NUSBAUM, solicitors for defendants in error.

OPINION OF THE COURT, *the Hon. Carroll C. Boggs, Judge.*
This decree is inequitable and highly unjust to the heirs of both Yarra Tilda Skaggs and James B. Skaggs. It

requires the master to sell, *en masse*, lands belonging to different owners. Charles Skaggs owned 120 acres. The heirs of Yarra Tilda Skaggs, forty acres, and the heirs of James B. Skaggs, forty acres. The absolute requirement that it be sold *en masse*, was a practical denial to the heirs of the persons named, of the right of redemption of their separate tracts from the sale. While the complainants had a lien upon all the land and had the right to have it all devoted to the payment of the mortgage indebtedness, if necessary, the rights and equities of the different owners required that it first be offered for sale in different and separate lots, and so sold, if satisfaction of the decree could thus be obtained. Ordinarily a decree of foreclosure may be wholly silent as to the order in which the premises shall be offered for sale, but when the mortgaged land consists of separate government subdivisions, belonging to different persons, the decree should so direct the order of sale of the lots or tracts as to preserve the rights and equities of the separate owners.

A decree absolutely requiring such premises to be sold in one body, in the absence of imperative reasons for such a course, can not be upheld.

The decree under consideration forbids a sale of the tracts separately, and this we regard as a fatal objection to it.

The clause in the trust deed, authorizing the trustee, in his discretion, to sell the property *en masse*, can not avail to support the decree.

An abuse of such discretion would not have been permitted in a sale made by the trustee. As James B. Skaggs and Yarra Tilda Skaggs, owners of the equity of redemption respectively in separate tracts of land, had died, sale could not be made by virtue of the power of sale in the trust deed, because of the provisions of the statute forbidding the execution of such powers in the event of the death of the owner of an equity of redemption. Sec. 13, Chap. 95, R. S.

The trustee and the owners of the note, because of such statutory provisions, were forced to ask the aid of the court, and they joined in this bill in chancery to obtain sale of the land under the equitable powers of the court.

The prayer of their bill is that the "usual decree may be made for the sale of the mortgaged premises," and such, under the circumstances of this case, should have been the extent of the relief granted them.

The master derived power to sell, not from the trust deed, but from the action of the court, and the clause in the mortgage which authorized the trustee to sell in a body, gave no such power to the master.

The decree should be reversed for other reasons growing partially out of the error of selling the land in a body.

A sale thus made would bring into the hands of the master a sum of money produced by the sale of property a part of which belonged to Charles Skaggs, another portion to the heirs of Yarra Tilda Skaggs, and still another to the heirs of James B. Skaggs.

The decree deals with this fund without regard to the rights of the parties whose property was seized and sold to produce it. Out of such sum the master is ordered to pay James Skaggs $1,000, to recompense him for releasing his homestead right in the land belonging to him, a matter in which the heirs of Yarra T. and James B. had no interest or concern. Out of the same fund the master is ordered to pay the complainants- in the original bill, the balance of the mortgage indebtedness, and then to apply the remainder of the fund (if necessary) to the payment of the amount decreed to Charles Skaggs, by way of vendor's lien upon the property of the heirs of Yarra T. and James B., respectively.

These liens were against the property of those deceased persons, separately, yet, under the provisions of the decree, both tracts, together with other tracts belonging to Charles Skaggs, are to be sold in a body, and the proceeds applied indiscriminately and without regard to the value of the tracts, to extinguish separate liens upon certain of the tracts. The right of Charles Skaggs to relief by way of the vendor's liens, rested upon the assumption that the grantees of the separate tracts had each agreed to pay as the purchase money of their respective tracts one-half of the mort-

gage debt and interest thereon, as specified in the trust deed. Under the decree, the proceeds of the sale of their tracts are not only charged with the payment of such vendor's liens, but also required to contribute to the payment of the balance unpaid of the original mortgage indebtedness, thus imposing upon the heirs of Yarra Tilda and of James B. Skaggs the burden of twice paying, or partially making double payments of the same indebtedness.

The decree should have directed the sale of the lands in parcels, and disposed of the proceeds according to the rights and equities of the different parties. Whether the decree should have ordered the master to apply the amount awarded Charles Skaggs in satisfaction of his "vendor's lien" claims upon executions and judgments held by Cyrus Skaggs against Charles, is a question that the plaintiffs in error can not raise. If erroneous, it affects only Charles Skaggs, and he alone can complain.

The answer of the minors by the guardian *ad litem*, though only formal, was sufficient to interpose any defense that appeared in their behalf in the evidence. Stark v. Brown, 101 Ill. 395.

The errors that we have pointed out in the decree clearly entitle the infant plaintiffs in error to a reversal, and the rights and interest of all the plaintiffs in error are so interwoven that relief can not be granted to a part of them only. The decree will therefore be reversed as to all.

We have only the report of the master and can not, therefore, determine whether the claims of Charles Skaggs, upon which the alleged vendor's lien rests, were barred or not. The disposition we make of the decree will open the case and admit such defenses as any of the parties may be advised to interpose. We can not anticipate the state of facts that will be developed upon another hearing, and therefore refrain from passing upon points made by counsel which may not again arise.

The decree will be reversed as to all the plaintiffs in error, with directions to the court to set aside the default of each of the plaintiffs in error who may desire to plead, answer

or demur to the original or cross-bill, and to further proceed to a final hearing of the cause, and to such decree as may be found consistent with the views here expressed. Reversed and remanded with directions.